UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KAREN ANTONE<br><br>        Plaintiff,<br><br>     v.<br><br>NOBEL LEARNING COMMUNITIES,<br>INC., LISA REESE and KELLY<br>HONER<br><br>        Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 11-3617<br>(JEI/KMW)<br><br>**OPINION** |

**APPEARANCES:**

KARPF & KARPF, P.C.
Ari R. Karpf
Jeremy M. Cerutti
3331 Street Road, Suite 128
Two Greenwood Square
Bensalem, PA 19020
     Counsel for Plaintiff

MORGAN, LEWIS & BLOCKIUS LLP
Terry Davon Johnson
502 Carnegie Center
Princeton, NJ 08540
     Counsel for Defendants

**IRENAS**, Senior District Judge:

     This case arises from Defendants' allegedly illegal

termination of Plaintiff's employment for taking a protected

medical leave of absence.  The instant matter comes before the

Court on Defendants' Motion to Dismiss for failure to state a

claim pursuant to Fed.R.Civ.P. 12(b)(6).[1]  (Dkt. No. 12)  For the
following reasons the Motion will be granted in part and denied
in part.

## I.

The following facts are pertinent only for the purposes of
this Motion to Dismiss.  Defendant Nobel Learning Communities,
Inc. employed Plaintiff Karen Antone from January 2002 through
June 2005 and again from August 2007 through her termination in
August of 2009.  (Compl. ¶¶ 14-16)  Defendants Lisa Reese and
Kelly Honer were Plaintiff's supervisors.  (*Id.* at ¶¶ 8, 9 & 16)

In 2009, Plaintiff suffered from health problems including,
but not limited to, "Cellulitis, Low CSF (cranal spinal fluid),
chronic headaches/migraines," and complications from a prior
vascular surgery.  (*Id.* at ¶¶ 17-18)  These health problems
caused Plaintiff to suffer physical limitations such as trouble
stooping, bending and walking. (*Id.* at ¶ 17)

On or about May 28, 2009, Plaintiff informed Human Resources
Administrator Chris Duane that Plaintiff would need to take a
leave of absence to undergo medical treatment in the hospital.
(*Id.* at ¶ 20)  More than a month later, in July of 2009, Nobel
sent Antone a Family and Medical Leave Act ("FMLA") certification

---

[1] The Court has jurisdiction pursuant to 28 U.S.C. § 1331 over the
federal claims and supplemental jurisdiction over all state claims pursuant to
28 U.S.C. § 1367.

form, which Antone and her physician promptly completed and returned.[2]  (*Id.* at ¶ 22)  Specifically, Plaintiff's physician informed Nobel that Plaintiff anticipated returning to work on August 28, 2009.  (*Id.* at ¶ 23)  At no time did Defendants take issue with this start date or inform Plaintiff of her rights under the FMLA.  (*Id.* at ¶ 28)  Defendants did not even notify Plaintiff that she was entitled to take up to twelve weeks of FMLA protected leave.

Defendants did not further communicate with Plaintiff until late August.  (*Id.* at ¶ 24)  At that point, Defendants informed Plaintiff that she would be terminated and replaced because her physician had not cleared her to work until August 28, 2009 - eight days after her FMLA leave would expire.  (*Id.* at ¶¶ 25-26)  Prior to this exchange, however, Defendants had not notified Plaintiff that her leave would expire on August 20, 2009 despite Nobel's knowledge that Plaintiff qualified for FMLA leave.  (*Id.* at ¶ 28)  Indeed, the only communication between the parties during Plaintiff's leave was the certification and the conversation with Chris Duane.

If not for this lack of communication, Plaintiff alleges she would not have missed the August 20, 2009 deadline because the last several days of Plaintiff's recovery were merely precautionary.  (*Id.* at ¶ 30) In support of this contention,

---

[2] All the contents of this certification were not identified.

Plaintiff's physician has submitted a certification that Antone could have been cleared to resume work by that date had they been informed of the August 28 deadline.  (*Id.* at Ex. A)

On June 23, 2011, Plaintiff filed the Complaint.  On August 26, 2011, Defendants filed this Motion to Dismiss.

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).

While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions.  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible.  *Phillips*, 515 F.3d at 234.  "A claim has facial plausibility when the

4

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

When evaluating a Rule 12(b)(6) motion to dismiss, the Court considers "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). A document that forms the basis of a claim is one that is "integral to or explicitly relied upon in the complaint." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

## III.

Plaintiff alleges two claims against all Defendants and four additional claims specifically against Nobel. Against all Defendants, Plaintiff brings claims for interference and retaliation in violation of the FMLA. Against Nobel, Plaintiff alleges claims for discrimination and retaliation under both the Americans with Disabilities Act ("ADA") and the New Jersey Law Against Discrimination ("LAD").

### A.

5

Relevant to this case, the FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A serious health condition is defined as a physical or mental condition that involves: "(A) inpatient care in a hospital . . . or (B) continuing treatment by a health care provider."[3] 29 U.S.C. 2611(11).

During the medical leave, the employer must maintain coverage under any group health plan at equivalent levels. *See* 29 U.S.C. § 2614(c)(1). "After an eligible employee returns from an FMLA leave, the employee is entitled to be reinstated to his or her former position, or an equivalent one." *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 141 (3d Cir. 2004); *see also* 29 U.S.C. § 2614(a)(1).

To invoke the protections of FMLA, an eligible employee has different duties depending on whether the medical condition was foreseeable or unforeseeable. Foreseeable medical leave, such as births or planned surgeries, require the employee to provide the employer with at least 30 days' notice or, if treatment is to begin sooner, "the employee shall provide such notice as is

---

[3] Defendant does not dispute that Plaintiff was an eligible employee and had a serious medical condition.

practicable." 29 U.S.C. § 2612(e)(2)(B). On the other hand, "[w]hen an eligible employee needs to take FMLA leave that was not foreseeable, '[t]he employee need not expressly assert rights under the FMLA or even mention the FMLA'; rather the employee need only notify the employer that leave is needed." *Conoshenti*, 364 F.3d at 141 n.6 (quoting 29 C.F.R. § 825.303(b)).

Here, the Court must make the inference that Antone's leave was not foreseeable. Therefore, the notice provided to Chris Duane fulfills Antone's notice duties under the statute.

Once an employee notifies an employer of an FMLA qualifying medical leave, "the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." 29 C.F.R. § 825.300(b)(1). The employer's notice must detail "the specific expectations and obligations of the employee and explain[] any consequences of a failure to meet these obligations." 29 C.F.R. § 825.300(c)(1). The employer bears the burden of informing the employee of the relevant FMLA rights. *See* 29 C.F.R. § 825.300(c).

Once an employer has enough information to make a determination whether the employee's leave is FMLA qualifying, the employer must provide "designation notice." 29 C.F.R. § 825.300(d). In other words, "[t]he employer must notify the employee of the amount of leave counted against the employee's

7

FMLA leave entitlement." 29 C.F.R. § 825.200(d)(6).

In this case, Defendants failed to provide Antone with any notice - whether designation or otherwise.

To protect these rights, the FMLA proscribes certain "prohibited acts." 29 U.S.C. § 2615. Plaintiff's claims for interference and retaliation invoke these protections. 29 U.S.C. § 2615(a).

**1.**

Plaintiff's first claim is for interference with protected FMLA rights.[4] "It shall be unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). Specifically, failing to provide notice or designation notice may constitute an interference claim. *See* 29 C.F.R. §§ 825.300(e), 825.301(e). To establish a claim, plaintiffs must show an "impairment of their rights and resulting prejudice." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 90 (2002).

Defendants argue that Plaintiff received her allotted twelve weeks of FMLA leave so there can be no interference. Defendants further argue that Plaintiff's physician only cleared her to

---

[4] The Court will first address this claim as it pertains to Defendant Nobel because Plaintiff alleges different facts against Reese and Honer.

8

commence work on August 28, 2009 - eight days after Plaintiff's FMLA leave expired.  Under the FMLA, an employer may terminate an employee that cannot return to work and perform an essential function of the job by the twelve week leave of absence.  *See Fogleman v. Greater Hazleton Health Alliance*, 122 Fed.Appx. 581, 587 (3d Cir. 2004).

In *Conoshenti*, these same arguments did not persuade the Third Circuit.  364 F.3d at 142-43.  There, Plaintiff attempted to return to work three days after his FMLA leave expired.  However, Plaintiff's employer had failed to provide notice to Plaintiff detailing when the FMLA leave would expire.  Plaintiff argued that had he been notified, Plaintiff could have returned to work in order to retain his job.  "We conclude that this is a viable theory of recovery."  *Id.* at 143.

The instant case raises the same issue.  Plaintiff timely notified Human Resources Director Chris Duane that she required hospitalization.  Although Nobel granted Antone the full twelve weeks of medical leave required under the FMLA, Nobel failed to provide timely notice and designation notice, which would have allowed Plaintiff "to make an informed decision about structuring [Plaintiff's] leave . . . in such a way as to preserve the job protection afforded by the Act."  *Id.*  As a result, Plaintiff was not able to structure her recovery to return to work within the FMLA allotted schedule and thereby suffered prejudice.

9

Taking all the allegations in the Complaint as true, Plaintiff has established a *prima facie* interference claim under the FMLA.  Accordingly, Defendants' Motion will be denied as to that claim.

### 2.

Plaintiff's next claim is for retaliation.[5]  The Third Circuit analyzes retaliation claims under 29 C.F.R. § 825.220(c), which requires a plaintiff to show that: "(1) he took an FMLA leave, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his leave." *Conoshenti*, 364 F.3d at 146.  "Even though 29 C.F.R. § 825.200(c) appears to be an implementation of the 'interference' provisions of the FMLA, its text unambiguously speaks in terms of 'discrimination' and 'retaliation,' and we shall, of course, apply it in a manner consistent with that text." *Id.* at 146-47 n.9.  Claims for retaliation utilize the familiar *McDonnell* burden shifting framework. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Defendant does not address the first element.  For the purposes of this Motion, therefore, the Court will assume that Nobel concedes that Antone took an FMLA leave.

---

[5] Again, the Court will address only Nobel in this section.

With respect to the second element, Nobel argues that Plaintiff has failed to allege that Defendants terminated Plaintiff.  A quick glance at the Complaint, however, reveals the frivolity of the argument.  Plaintiff alleges that she was "replaced" or "terminated" in at least four distinct paragraphs. (*See* Compl. ¶¶ 25, 28, 30 & 36)

In the alternative, Nobel argues that Antone has pled insufficient facts surrounding the termination.  The Court disagrees.

At this stage in the litigation, the Complaint need not provide a detailed description of the termination.  The Complaint states that in "late August of 2009 [] Defendants expressed Plaintiff was being replaced because she could not return to work by August 20, 2009."  (Compl. ¶ 25)  Nothing in *Iqbal* suggests that Plaintiff must provide the details surrounding the exchange.

Under the *McDonnell* burden shifting framework, Defendants argue that because Plaintiff could not return to work by the August 20, 2009 deadline, Defendants had a legitimate nondiscriminatory purpose for the termination.

However, this argument would defeat the purpose of the statute.  Antone did not return to work by August 20, 2009 only because Defendants failed to provide Antone with adequate notice of her rights as required by the FMLA.  Nobel's failure to provide notice cannot conceivably justify its decision to

11

terminate Antone.

Defendant does not address the third element.  Therefore, Antone has alleged facts sufficient to establish a *prima facie* retaliation claim and the Motion to Dismiss will be denied.

**3.**

Defendants Reese and Honer argue that individuals cannot be held liable under the FMLA and that, even if they can be held liable, Plaintiff has failed to allege facts sufficient to establish a claim.

The Third Circuit has not yet decided the issue of whether individuals may be held liable under the FMLA.  The Court need not reach that issue, however, because Plaintiff has not alleged facts sufficient to establish such a claim even it were valid.

The Complaint presents a problem of construction.  Paragraph One of the Complaint states that "[t]his action has been initiated by Plaintiff against Nobel Learning Communities Inc. (hereinafter referred to as 'Defendant' unless indicated otherwise)."  Paragraph Nine states that "Defendants Lisa Reese (at all times relevant herein, a manager for Defendant) and Kelly Honer (at all times relevant herein, a principal for Defendant) are individual Defendants (collectively referred to herein as 'Individual Defendants' or by their respective names) to this action because at all times relevant herein, they made the

12

decision to terminate Plaintiff's employment in violation of laws specified herein (particularly the FMLA)."

These definitions make a significant distinction between the singular and plural use of the word "Defendant."  The singular refers only to Nobel but the term "Defendants," which is not defined, supposedly refers to all three defendants.

By employing these definitions in a light most favorable to Plaintiff, certain key allegations in the Complaint apply only to Nobel.  For example, "Defendant did not inform Plaintiff in writing that if she failed to return by August 20, 2009, she would be terminated from Defendant."  (Compl. ¶ 28)

In fact, very few paragraphs allege facts against "Defendants" or Reese and Honer specifically.  Paragraph 22 alleges that "Defendants" sent her a certification, but in the same sentence, Plaintiff only returned the certification to "Defendant."[6]  Paragraph 25 alleges that "[d]espite having returned her FMLA certification to Defendants in July of 2009, Defendants did not contact Plaintiff and take issue with her specified return date of August 28, 2009 until late August 2009 when Defendants expressed Plaintiff was being replaced because she could not return to work by August 20, 2009."  The only other allegation against Reese and Honer, apart from rudimentary

---

[6] It is unclear whether this was a typographical error or Plaintiff truly meant that all three defendants sent the certification but only Nobel received the completed copy.

13

identifications, states that "Defendant Individuals Reese and Honer are liable for violations of the FMLA because they specifically were aware of Plaintiff's FMLA entitlements and needs and intentionally terminated Plaintiff in contravention of her FMLA entitlements."  (Compl. ¶ 37)

Of these three clauses, paragraph 22 alleges that Reese and Honer sent Antone the certification, but did not receive the completed copy.  (*See* Compl. ¶ 22)  Paragraph 37 is a legal conclusion that the Court is not required to accept as true. (*See* Compl. ¶ 37)  Therefore, the Court must determine whether Plaintiff has established interference and retaliation claims based solely on paragraph 25 and the latter portion of paragraph 9, which states that Reese and Honer made the decision to terminate Plaintiff.[7]

Taken alone, the facts alleged are insufficient to establish a claim for interference or retaliation.  To invoke the protections of the FMLA, "the employee need only notify the employer that leave is needed."  *Conoshenti*, 364 F.3d at 141 n.6. However, Plaintiff only notified Nobel.  (*See* Compl. ¶ 21)  These threadbare allegations do not establish that Reese and Honer received Plaintiff's notice of leave, which would trigger their

---

[7] Although it is arguable whether the blanket statement that Reese and Honer made the decision to terminate Antone without providing any factual details is a legal conclusion, the Court will accept this allegation as true for the purposes of this Motion.

notice requirements to Antone under the FMLA.[8]  Antone cannot maintain claims under the FLMA if she did not properly invoke the protections of the FMLA.

Plaintiff has not adequately alleged a claim for interference or retaliation against Reese and Honer. Accordingly, the Motion will be granted on those claims.

## B.

Next, Plaintiff alleges against only Nobel claims for discrimination and retaliation in violation of the ADA and the LAD.  Nobel raises two arguments for dismissal.  First, Antone is not eligible for protection under the ADA and the LAD.  Second, Antone has not pled facts sufficient to establish a *prima facie* retaliation claim.  The ADA and LAD claims will be analyzed together because "under the NJLAD, the New Jersey Supreme Court frequently looks to the U.S. Supreme Court's analysis of discrimination claims under Title VII of the Civil Rights Act of 1964."  *Incorvati v. Best Buy Co., Inc.*, 2010 WL 4807062, *5 (citing *Lehmann v. Toys 'R' Us, Inc.,* 132 N.J. 587, 600 (N.J. 1993)).

## 1.

---

[8]  The Complaint does not allege that Reese and Honer had constructive or actual knowledge of Plaintiff's medical situation due to their supervisory positions or employment with Nobel.

15

Under the ADA, a plaintiff must establish that: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (quoting *Gaul v. Lucent Tech.*, 134 F.3d 576, 580 (3d Cir. 1998).

A disability is defined as: "(A) A physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to . . . walking, standing, lifting, bending." 42 U.S.C. § 12102(2)(A).

Plaintiff has alleged that her health problems limited her ability to stoop, bend and walk. (*See* Compl. ¶ 17)  At this stage in the litigation, these facts are sufficient to establish that Plaintiff is disabled within the meaning of the ADA.  *See* 42 U.S.C. § 12102(4)(A) ("The definition of disability in this chapter shall be construed in favor of broad coverage of individuals.").

Defendant makes no further arguments for dismissal on the discrimination claim.  Therefore, Defendant's Motion will be

16

denied with respect to the discrimination claims under the ADA and LAD.

**2.**

With respect to the retaliation claim, the ADA provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter."  42 U.S.C. § 12203(a).  Opposition includes filing charges, testifying or otherwise objecting to protected activity. *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 188 (3d Cir. 2003).

To establish a claim, Plaintiff must show: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."  *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567-68 (3d Cir. 2002).  "Thus, it is unlawful for an employer to retaliate against an employee based upon the employee's opposition to anything that is unlawful under the ADA."  *Shellenberger*, 318 F.3d at 188.  The *McDonnell* burden shifting framework applies to the retaliation claim.  *Williams v. Philadelphia Hous. Auth. Police Dept.*, 380 F.3d 751, 758 (3d Cir. 2004).

While this framework suggests that the employee would have

17

to voice some opposition, "[t]his would leave employees unprotected if an employer granted the accommodation and shortly thereafter terminated the employee in retaliation." *Shellenberger*, 318 F.3d at 191 (quoting *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir. 1997). Therefore, an employee that is fired for engaging in protected activity will establish a cause of action for retaliation.

Protected activity includes requiring a reasonable accommodation from an employer. Once an employee requests a reasonable accommodation, "the employer must make a reasonable effort to determine the appropriate accommodation . . . through a flexible, interactive process that involves both the employer and the [employee]." *Greater Hazleton*, 122 Fed.Appx. at 585 (quoting 29 C.F.R. Pt. 1630, App. § 1630.9, at 361).

Here, Plaintiff's FMLA leave is inextricably intertwined with her rights under the ADA. According to Nobel's calculations, Plaintiff was entitled to take an FMLA leave of absence up to August 20, 2009. Although FMLA may have required no further accommodation, the ADA provides additional entitlements. Relevant to this case, Defendant was required to engage Plaintiff in an interactive process to determine the extent to which Antone required a reasonable accommodation upon her return from FMLA leave.

Nobel did not engage in this process, however, despite

18

knowing of Plaintiff's temporary disability and anticipated return date.  Nobel made no effort to determine whether Plaintiff could return to work by August 20 with a reasonable accommodation or whether an additional eight day leave of absence would have been a reasonable accommodation itself.  *See Conoshenti*, 364 F.3d at 151 (acknowledging that leaves of absence may constitute reasonable accommodations under the ADA).

Without first engaging Plaintiff in an interactive process concerning her anticipated August 28 return date, Nobel fired Antone.  (*See* Compl. ¶ 25)  This allegation is sufficient to show that Nobel took an adverse employment action against Plaintiff for engaging in protected activity - requesting a reasonable accommodation.  Accordingly, Defendants' Motion will be denied with respect to the retaliation claim under the ADA and LAD.

## IV.

For the foregoing reasons, Defendants' Motion will be granted in part and denied in part.  Defendants' Motion will be granted with respect to all claims against Defendants Reese and Honer.  In all other respects, Defendants' Motion will be denied.  Plaintiff will be granted leave to file a motion to amend the Complaint within 14 days of this Opinion.  *See Phillips*, 515 F.3d at 245 (holding that district courts "must permit a curative amendment unless such an amendment would be inequitable or

futile.").  An appropriate Order accompanies this Opinion.


Date: 1/19/12

                                        /s/ Joseph E. Irenas

                                   **JOSEPH E. IRENAS, S.U.S.D.J.**

20